IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**NOREEN JEAN BEGAYE,**

    **Plaintiff,**

 **v.**                                                                                                                                           **No. 16-cv-0281 SMV**

**NANCY A. BERRYHILL,**[1]
**Acting Commissioner of Social Security Administration,**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand for Payment of Benefits, or in the Alternative, for Rehearing, with Supporting Memorandum [Doc. 18] ("Motion"), filed on October 4, 2016. The Commissioner responded on January 6, 2017. [Doc. 26]. Plaintiff replied on January 19, 2017. [Doc. 27]. The parties have consented to the undersigned's entering final judgment in this case. [Doc. 8]. Having meticulously reviewed the entire record and being fully advised in the premises, the Court finds that Plaintiff fails to meet her burden as the movant to show that the Administrative Law Judge ("ALJ") did not apply the correct legal standards or that his decision was not supported by substantial evidence. Accordingly, the Motion will be denied and the Commissioner's final decision affirmed.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[2] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Courts must meticulously review the entire record, but may neither reweigh the evidence nor substitute their judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. The decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While a court may not re-weigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the [Commissioner]'s findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

---

[2] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981, 416.1481. This case fits the general framework, and therefore, the Court reviews the ALJ's decision as the Commissioner's final decision.

"The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted).

## Applicable Law and Sequential Evaluation Process

In order to qualify for disability benefits, a claimant must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) she is not engaged in "substantial gainful activity"; *and* (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) her impairment(s) either meet or equal one of the "Listings"[3] of presumptively disabling impairments; *or* (4) she is unable to perform her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If she cannot show that her impairment meets or equals a Listing, but she proves that she is unable to perform her "past relevant work," the burden of proof then shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy,

---

[3] 20 C.F.R. pt. 404, subpt. P, app. 1.

3

considering her residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

**<u>Procedural Background</u>**

Plaintiff applied for a period of disability, disability insurance benefits, and supplemental security income on January 9, 2013. Tr. 10. She alleged a disability-onset date of January 1, 2003. *Id.* Her claims were denied initially and on reconsideration. *Id.* Plaintiff requested a hearing before an ALJ. *Id.* ALJ John W. Rolph held a hearing on October 20, 2014. *Id.*, Tr. 27−60. Plaintiff appeared with her attorney. Tr. 10, 27. The ALJ heard testimony from Plaintiff and an impartial vocational expert ("VE"), Leslie White. Tr. 10, 32–58.

The ALJ issued his unfavorable decision on December 16, 2014. Tr. 21. He found that Plaintiff met the insured status requirements through December 31, 2008. Tr. 12. At step one he found that Plaintiff had not engaged in substantial gainful activity since the onset date of her alleged disability. *Id.* Because Plaintiff had not engaged in substantial gainful activity for at least 12 months, the ALJ proceeded to step two. *Id.* There he found that Plaintiff suffered from the following severe impairments: back problems, myofascial pain, obesity, type II diabetes mellitus, mild left hearing loss, chronic alcohol abuse/dependence, anxiety, panic disorder without agoraphobia, post-traumatic stress disorder ("PTSD"), and obsessive compulsive disorder ("OCD"). Tr. 13.

At step three the ALJ determined that none of Plaintiff's impairments, alone or in combination, met or medically equaled a Listing. Tr. 13–14. Because none of Plaintiff's

4

impairments met or medically equaled a Listing, the ALJ went on to assess Plaintiff's RFC. Tr. 14–19. The ALJ found that:

> [Plaintiff] has the [RFC] to perform light work as defined in 20 [C.F.R. §§] 404.1567(b) and 416.967(b) except she is able to lift, carry, push and pull up to 20 pounds occasionally, and 10 pounds frequently in light work as defined by the regulations. She may occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl, but may never climb ladders, ropes, or scaffolds. She must avoid more than occasional exposure to extreme cold, noise, vibration, and hazards such as dangerous machinery and unsecured heights. She can perform work tasks that do not require fine hearing discrimination. She is fully capable of learning, remembering and performing simple, routine, and repetitive work tasks, involving simple work instructions, which are performed in a routine, predictable, and low stress work environment, defined as one in which there is a regular pace, few work place changes, and no over the shoulder supervision. She can maintain concentration, persistence and pace for two hours at a time with normal breaks. She may interact appropriately with supervisors and coworkers on an occasional and superficial basis. She should have minimal to no contact with the public. She will perform optimally in work tasks that do not require teamwork, and that allow her to work independently of others.

Tr. 14–15. At step four the ALJ found that Plaintiff was unable to perform any of her past relevant work as a fast food worker. Tr. 20. At step five the ALJ found that, based on Plaintiff's RFC, age, education, and work experience and the testimony of the VE, Plaintiff could perform work that exists in significant numbers in the national economy, namely cleaner/housekeeper and marker. Tr. 20–21. Ultimately, the ALJ found that Plaintiff had not been under a disability, as defined by the Act, during the relevant time period, and he denied the claims. Tr. 21. The Appeals Council denied Plaintiff's request for review on March 14, 2016. Tr. 1–5. Plaintiff timely filed the instant action on April 11, 2016. [Doc. 1].

5

## Analysis

Plaintiff fails to show reversible error in the ALJ's assessment of her RFC. While she cites evidence that could support a more restrictive RFC, she fails to show that the RFC is not supported by substantial evidence or was the product of an incorrect legal standard. Similarly, Plaintiff fails to show reversible error in the evaluation of Dr. DeBernardi's and Dr. Smith's opinions. The functional limitations assessed by the doctors are adequately reflected in the RFC assessment. Finally, Plaintiff fails to show any error in the ALJ's evaluation of her credibility or at step five.

### Plaintiff fails to show reversible error in the limitations assessed in the RFC arising from her anxiety and depression or her diabetes, diverticulitis, and pain.

Plaintiff recounts, at great length, the medical evidence that supports her symptoms of anxiety and depression. [Doc. 18] at 6–12. She also recounts evidence that would support limitations resulting from diabetes, diverticulitis, and pain. *Id.* at 13–16. She argues that this evidence establishes limitations in lifting and due to fatigue and, therefore, it was error for the ALJ to determine that she was not disabled. Tr. 16. She does not specify any particular limitation that she believes is lacking from the RFC. She simply concludes that the RFC assessment should have been more restrictive and that she should be found disabled. [Doc. 18] at 6, 12–13, 16

The Court is not persuaded. Plaintiff fails to show how this evidence, and her resulting limitations, are not adequately reflected in the ALJ's RFC assessment. The ALJ agreed that Plaintiff suffered from severe back problems, myofascial pain, diabetes, anxiety, panic disorder, PTSD, and OCD, among other problems. Tr. 13. He also agreed that Plaintiff's diverticulitis

was a medically determinable impairment, although not severe. *Id.* As a result, he determined that she had both physical and mental limitations in functioning. Tr. 14–15 (RFC assessment). Even if the record evidence were sufficient to support further limitations (beyond those included in the RFC assessment), reversal would not be warranted. The standard is whether the ALJ's findings are supported by substantial evidence, not whether substantial evidence could support some other findings. Having carefully considered the evidence cited by Plaintiff, [Doc. 18] at 6−13, the Court finds that she fails to show how her impairments and resulting functional limitations are not adequately reflected in the RFC assessment.

<u>Dr. DeBernardi's and Dr. Smith's opinions are adequately reflected it the RFC.</u>

Plaintiff argues that the ALJ erred in evaluating Dr. DeBernardi's and Dr. Smith's opinions. [Doc. 18] at 9–10, 12–13, 16–18. She argues that the ALJ committed error by incorporating some, but not all, of their assessed limitations into the RFC assessment without explaining the omissions.

Although ALJs need not discuss every piece of evidence, they are required to discuss the weight assigned to each medical source opinion. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii)). An ALJ must consider a medical opinion in its entirety; he may not ignore any portion of it. *Silva v. Colvin*, 203 F. Supp. 3d 1153, (D.N.M. 2016) (surveying the authorities and holding that no authority permits an ALJ to ignore a medical opinion merely because it is recorded in "section I" rather than "section III"). "[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on [a specific] functional capacity . . .

because the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (alteration and internal quotation marks omitted)); *see Wells v. Colvin*, 727 F.3d 1061, 1071 (10th Cir. 2013) (same). Nevertheless, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Chapo*, 682 F.3d at 1292 (internal brackets omitted) (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)). ALJs are required to weigh medical source opinions and to provide "appropriate *explanations* for accepting or rejecting such opinions." Social Security Ruling ("SSR") 96-5p, 1996 WL 374183, at *5 (July 2, 1996) (emphasis added); *see Keyes-Zachary,* 695 F.3d at 1161 (same) (citing 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii)). "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 SSR LEXIS 5, at *20, 1996 WL 374184, at *7.

Here, Plaintiff points to the following findings, which she argues were omitted without explanation from the ALJ's RFC assessment. The Court disagrees and lists the RFC limitation that accounts for the disputed findings:

| Dr. DeBernardi's findings [Doc. 18] at 10 (citing Tr. 409[4]) | Corresponding limitation in RFC assessment Tr. 14–15 |
|---|---|
| fair immediate memory, mild limitation in ability to follow basic directions | "She is fully capable of learning, remembering and performing simple, routine, and repetitive work tasks, involving simple work instructions, . . ." |
| poor sustained concentration and persistence ("claimant presents as rather distractible") | "She is fully capable of learning, remembering and performing simple, routine, and repetitive work tasks, involving simple work instructions, which are performed in a routine, predictable, and low stress work environment, defined as one in which there is a regular pace, few work place changes, . . . She can maintain concentration, persistence and pace for two hours at a time with normal breaks." |
| relatively limited adaptive skills | "She is fully capable of learning, remembering and performing simple, routine, and repetitive work tasks, involving simple work instructions, which are performed in a routine, predictable, and low stress work environment, defined as one in which there is a regular pace, few work place changes, . . ." |
| relatively limited ability to tolerate stress | "routine, predictable, and low stress work environment" |

---

[4] Plaintiff also cites to Tr. 114–15, which she describes as "where the psychologist at the reconsideration level agreed with [Dr. Smith's] moderate limitations." [Doc. 18] at 17. However, Dr. Smith himself was the psychologist at the reconsideration level. The psychiatrist at the initial level was Scott Walker, M.D. He submitted two reports, one regarding the social security claim and one regarding the SSI claim. Tr. 89, 97–98. Although both reports are dated June 24, 2013, they are quite different. *Compare* Tr. 89 (social security claim), *with* Tr. 97–98 (SSI claim). Neither is necessarily inconsistent with Dr. Smith's opinion, but neither addresses the areas of functioning in as much detail as Dr. Smith's report.

| | |
|---|---|
| would have difficulty forming appropriate relationships with co-workers, supervisors, or the general public | "[N]o over the shoulder supervision. . . . She may interact appropriately with supervisors and coworkers on an occasional and superficial basis. She should have minimal to no contact with the public. She will perform optimally in work tasks that do not require teamwork, and that allow her to work independently of others." |
| would have difficulty tolerating changes in the work environment | "She is fully capable of learning, remembering and performing simple, routine, and repetitive work tasks, involving simple work instructions, which are performed in a routine, predictable, and low stress work environment, defined as one in which there is a regular pace, few work place changes, . . ." |

| | |
|---|---|
| would have difficulty sustaining a typical workday | "She is fully capable of learning, remembering and performing simple, routine, and repetitive work tasks, involving simple work instructions, which are performed in a routine, predictable, and low stress work environment, defined as one in which there is a regular pace, few work place changes, and no over the shoulder supervision. She can maintain concentration, persistence and pace for two hours at a time with normal breaks. She may interact appropriately with supervisors and coworkers on an occasional and superficial basis. She should have minimal to no contact with the public. She will perform optimally in work tasks that do not require teamwork, and that allow her to work independently of others." <br><br> *See Sullivan v. Colvin*, 519 F. App'x 985, 989 (10th Cir. 2013) (a limitation to unskilled[5] work adequately reflects moderate limitations in maintaining a schedule and regular attendance, and completing a normal workday). |

---

[5] *See generally* SSR 96-9p, 1996 WL 374185 at *9 (equating a limitation of simple work-related decisions to unskilled work).

| Moderate limitations assessed by Dr. Smith [Doc. 18] at 16–17 (citing Tr. 100–01) | Corresponding limitation in RFC assessment Tr. 14–15 |
|---|---|
| the ability to sustain an ordinary routine without special supervision; | "She is fully capable of learning, remembering and performing simple, routine, and repetitive work tasks, involving simple work instructions, which are performed in a routine, predictable, and low stress work environment, defined as one in which there is a regular pace, few work place changes, and no over the shoulder supervision. She can maintain concentration, persistence and pace for two hours at a time with normal breaks. She may interact appropriately with supervisors and coworkers on an occasional and superficial basis. She should have minimal to no contact with the public. She will perform optimally in work tasks that do not require teamwork, and that allow her to work independently of others."<br><br>*See Sullivan*, 519 F. App'x at 989 (holding that unskilled work adequately accounted for moderate limitations in maintaining a schedule and regular attendance, and completing a normal workday). |
| the ability to accept instructions from and respond appropriately to criticism from supervisors | "no over the shoulder supervision" |

| | |
|---|---|
| the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; | "She is fully capable of learning, remembering and performing simple, routine, and repetitive work tasks, involving simple work instructions, which are performed in a routine, predictable, and low stress work environment, defined as one in which there is a regular pace, few work place changes, and no over the shoulder supervision. She can maintain concentration, persistence and pace for two hours at a time with normal breaks. She may interact appropriately with supervisors and coworkers on an occasional and superficial basis. She should have minimal to no contact with the public. She will perform optimally in work tasks that do not require teamwork, and that allow her to work independently of others."<br><br>*See Sullivan*, 519 F. App'x at 989 (a limitation to unskilled work adequately reflects moderate limitations in maintaining a schedule and regular attendance, and completing a normal workday). |
| the ability to set realistic goals or make plans independently of others | "She is fully capable of learning, remembering and performing simple, routine, and repetitive work tasks, involving simple work instructions, which are performed in a routine, predictable, and low stress work environment, defined as one in which there is a regular pace, few work place changes, . . . ." |

Plaintiff fails to show that the doctors' limitations are not adequately accounted for in the RFC assessment. Reversal is not warranted.

13

<u>Plaintiff fails to show reversible error in the evaluation of her credibility.</u>

SSR 96-7p requires ALJs to "make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects. . . . It is not sufficient for the adjudicator to make a single, conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" 1996 SSR LEXIS 4, at *2–3.[6] Specifically, in evaluating the credibility of a claimant's subjective complaints, the ALJ follows the steps outlined in *Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987). First, accepting the subjective allegations as true, the ALJ must determine whether the claimant has a medically determinable impairment that "could reasonably be expected to produce the alleged [symptoms]." *Luna*, 834 F.2d at 163; *see* SSR 96-7p, 1996 WL 374186, at *2. "If an appropriate nexus does exist," the ALJ must next consider all of the relevant evidence "to determine whether the claimant's [symptoms are] in fact disabling." *Luna*, 834 F.2d at 163; *see* SSR 96-7p, 1996 WL 374186, at *2. The ALJ must consider "the medical data previously presented, any other objective indications of the degree of [the symptoms], and subjective accounts of the severity" in determining whether the ALJ believes the claimant. *Luna*, 834 F.2d at 163. That is, the ALJ must assess the credibility of the claimant's assertions of pain or other symptoms. *Id.*

---

[6] SSR 96-7p was superseded on March 29, 2016 (after the Commissioner's decision became final and after the action was already pending in this Court), by SSR 16-3p. The new ruling "eliminat[es] the use of the term 'credibility' [and] clarif[ies] that subjective symptom evaluation is not an examination of a [claimant]'s character." 2016 SSR LEXIS 4, at *1, 2016 WL 1119029, at *1. "Generally, if an agency makes a policy change during the pendency of a claimant's appeal, the reviewing court should remand for the agency to determine whether the new policy affects its prior decision." *Frantz v. Astrue,* 509 F.3d 1299, 1302 (10th Cir. 2007). The new Ruling, however, does not appear to be a policy change but, rather, a clarification. As to the issues raised in this appeal, the Court sees no material difference between the Rulings. The Court's analysis of Plaintiff's argument is the same under either Ruling. Thus, the rescission of SSR 96-7p and issuance of SSR 16-3, alone, does not warrant remand.

The district court cannot re-weigh the evidence. It can only review an ALJ's decision to ensure that he applied the correct legal standard and that his findings are supported by substantial evidence. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). "Credibility determinations are peculiarly the province of the finder of fact, and [courts] will not upset such determinations when supported by substantial evidence." *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir. 1995) (internal quotation marks omitted). Boilerplate language, however, is insufficient. *Id.* Instead, "it is well settled that [ALJs] must give reasons for their decisions." *Reyes v. Bowen*, 845 F.2d 242, 244 (10th Cir. 1988). Although ALJs need not discuss "every piece of evidence," *Clifton*, 79 F.3d at 1010, their "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler*, 68 F.3d at 391 (internal quotation marks and brackets omitted).

Here, the ALJ found that Plaintiff's impairments could reasonably be expected to cause the symptoms she reports. Tr. 19. Nevertheless, he also found that her statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely credible. *Id.* He then went on to make several specific findings pertinent to the credibility determination:

> There is minimal objective evidence to support the claimant['s] allegations about the limiting nature of her impairments. The undersigned finds that review of the claimant's work history shows that she is clearly able to perform work at the established residual functional capacity. Her work history and earnings record suggest poor motivation for work in general. The claimant alleges an onset date of January 1, 2003; however, she did not file a claim for disability until January 9, 2013, more than ten years later. This date is past her date last insured of December 31, 2008. The claimant is a single mother of five children, one of [whom] is a quadriplegic and she cares for him full time. There is no PTSD diagnosis in the record until her consultative examination with

15

>           Dr. DeBernardi. Before that, there was no mention of
>           psychological medical evidence or impairments. The undersigned
>           finds that the claimant is not fully credible in this regard. She is
>           taking no psychotropic medications, as she claims that they do not
>           work. She is noted to be on and off medication for diabetes
>           mellitus, often electing to control her symptoms with diet. There is
>           no mention of OCD until April of 2013, after this claim was filed.
>           In spite of all of her allegations of mental impairments, the
>           claimant cares for four of her five children. She gets her younger
>           children ready for school, shops up to twice a week, cares for her
>           disabled son, walks one to two miles a day, uses an exercise bike,
>           [uses] Facebook, sends texts, does laundry, and cooks.

*Id.*

Plaintiff challenges these credibility findings on several grounds. First, she argues that there are, in fact, "test results that show how limiting her mental impairments are." [Doc. 18] at 18 (citing Tr. 385, 488). Thus, she argues, it was error for the ALJ to make a credibility finding adverse to her on the basis of "minimal objective evidence."[7] Next, Plaintiff complains that the ALJ's assessment of her activities of daily living ("ADLs") exaggerated her functioning level. *Id.* at 19. For example, she points to evidence showing that her boyfriend, not she, performs most of the care of her quadriplegic son. *Id.* (citing Tr. 33–34). She also argues that it was error for the ALJ to rely on her hesitation to take certain medications without also addressing whether her reasons for doing so were legitimate and legally sufficient. *Id.* at 19–20 (citing *Frey v. Bowen*, 816 F.2d 508, 517 (10th Cir. 1987)). She alleges they are. Finally, Plaintiff points out that there is no evidence in the record that she malingers. *Id.* at 20. In fact,

---

[7] She also argues that her "counselor and psychiatrist treated and medicated her for depression and anxiety over a period of more than 10 years based upon observed signs and symptoms of depression and anxiety, which is clinically acceptable." [Doc. 18] at 18. However, this allegation appears to be in error because Plaintiff has not seen any mental health provider for more than ten years. She began seeking regular mental health treatment in 2011. [Doc. 18] at 6; [Doc. 26] at 2.

16

there is evidence to the contrary. *Id.* Ultimately, Plaintiff argues that the ALJ failed to closely and affirmatively link substantial evidence to his credibility findings. *Id.*; [Doc. 27] at 5–6.

The Court finds that the ALJ's credibility determination passes muster. The ALJ explicitly made the required *Luna* findings. Even disregarding the findings that Plaintiff challenges, the ALJ's credibility findings are nevertheless closely and affirmatively linked to substantial evidence. Besides the findings that Plaintiff challenges, the ALJ gave other reasons for his credibility determination: He found that Plaintiff's work history showed that she was capable of working but had poor motivation. He noted that she did not file a claim for benefits until more than ten years after she believed she became disabled, nor was there any "mention of psychological medical evidence or impairments" prior to the date she applied for benefits. There was no diagnosis of PTSD until her consultative exam with Dr. DeBernardi, nor was there any mention of OCD until after Plaintiff had applied for benefits. Moreover, the ALJ found that Plaintiff cares for four of her children, gets them ready for schools, shops, provides care for her disabled son, goes on walks, uses an exercise bike, uses Facebook, texts, does laundry, and cooks. Tr. 19. Plaintiff fails to show reversible error in the ALJ's credibility determination.

<u>Plaintiff fails to show reversible error related to the VE's testimony.</u>

Plaintiff argues that the VE's testimony cannot constitute substantial evidence to support the ALJ's step-five findings. First, she argues that the hypothetical presented to the VE did not contain all of her functional limitations. However, the Court disagrees. Plaintiff has failed to show reversible error in the RFC assessment. Thus, this argument is rejected.

Next, Plaintiff argues that remand is warranted for resolution of a conflict between the VE's testimony and the Dictionary of Occupational Titles ("DOT"). [Doc. 18] at 21. Specifically, she argues that because the RFC assessment limits her to simple (or unskilled) work, she necessarily is not capable of performing work with a reasoning level of two or higher. *Id.* (citing *Paulek v. Colvin*, 662 F. App'x 588 (10th Cir. 2016)). Defendant argues that *Paulek* addressed reasoning level three or higher and that the reference to level-two reasoning was a mere dictum. [Doc. 26] at 15–16. The Court agrees with Defendant.

The court in *Paulek* (which was unpublished) relied on *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005), an earlier, published case, to hold that a limitation to simple instructions is inconsistent with level-three reasoning. 662 F. App'x at 594. *Hackett* had already established that simple *work* was inconsistent with level-three reasoning. But the plaintiff in *Paulek* had been limited to simple *instructions*. In rendering its decision (regarding level-three reasoning), the *Paulek* court cited to *Lucy v. Chater*, 113 F.3d 905, 909 (8th Cir. 1997), where the Eighth Circuit had held that simple instructions were inconsistent with both level-two and level-three reasoning. This Court does not interpret *Paulek's* reference to *Lucy* as a suggestion, much less a holding, that level-two reasoning is inconsistent with simple work (at least not in the Tenth Circuit). Rather, the reference to *Lucy* was to liken simple *instructions* to simple *work*. The upshot in *Paulek* was that *Hacket* still controlled, and level-three reasoning is inconsistent with both simple *work* and simple *instructions*. Plaintiff's citation to *Paulek* does not persuade the Court that there is a conflict between the VE's testimony in this case and the DOT.

Finally, Plaintiff argues that the ALJ cited only two jobs at step five, whereas the Program Operations Manual System ("POMS") required him to cite three. *Id.* at 21–22 (citing POMS § DI 25025.030(B)). The ALJ found that 270,000 marker positions existed in the national economy. Tr. 20. Further, he found that marker and cleaner/housekeeper jobs existed "in significant numbers in the national economy." Tr. 21. These findings satisfy the exception to the rule that ALJs cite three jobs at step five. POMS § DI 25025.030(B)(exceptions paragraph). Plaintiff fails to show reversible error related to the VE's testimony or otherwise at step five.

## Conclusion

Plaintiff fails to show that substantial evidence does not support the ALJ's findings. She also fails to show that the ALJ failed to apply the correct legal standards. Accordingly, remand is not appropriate.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Motion to Reverse and Remand for Payment of Benefits, or in the Alternative, for Rehearing, [Doc. 18] is **DENIED**. The Commissioner's final decision is affirmed.

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**
**Presiding by Consent**